ULLMAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 18—April 5, 1905.*

*Criminal law and practice: Jurors: Challenge to the array, how made and determined: Waiver: Jury lists: Drawing: Harmless irregularities: Assault with intent to kill: Evidence: Opinions: Appeal: Bill of exceptions.*

1. By the rules of the common law a challenge to the array is required to be made in writing stating specifically the grounds thereof.

2. The Code is a complete system for criminal as well as civil actions. While it provides no challenge to the array it does not invade the inherent power of the courts, which, by the settled practice, accords to either party to an action triable by a jury an opportunity to object to the entire panel of jurors upon any ground deemed by him to affect the validity thereof.

3. An objection of the sort before mentioned may be by a formal challenge, or by a mere objection, or by a motion to quash the return, or to dismiss the jury, mere form not being material, and it may properly be, as it commonly is, denominated a challenge to the array.

4. In whatever form the challenge to the array, so called, is made, the specific grounds relied on should be definitely stated, though not necessarily in writing, it being sufficient if it is made at the bar of the court and taken down by the reporter.

5. How specific the grounds of a challenge to the array should be made in order to entitle the moving party to a hearing is within the discretion of the court, such discretion, however, not being broad enough to permit the grounds to be stated so generally or obscurely as not to reasonably inform the adverse party of the precise nature thereof.

6. A proper objection to the entire panel of jurors should be summarily determined by the court, evidence being taken where necessary to the decision of disputed questions of fact.

7. In order to entitle a person deeming himself aggrieved by a ruling on a challenge to the array to a review thereof on an appeal, exception must be duly taken thereto, and the specific objections and proceedings thereon and such exception be embodied in a bill of exceptions.

8. The law requiring the jury commissioners to furnish the clerk of the circuit court a list of names of persons qualified to serve as jurors to be drawn from the body of the county is satisfied

if each commissioner proposes a partial list and all are adopted by the commissioners as the one list required by the statute and are delivered to the clerk of the circuit court accordingly.

9. Failure of the commissioners to authenticate the list of names furnished to the clerk as above stated, or of the clerk of the circuit court to make a list of such names and deliver the same to at least one of the commissioners, or failure of such clerk or his deputy to personally write the names upon separate slips of paper, fold and deposit the same in the box ready for drawing, such acts being performed by an employee of the clerk under his direction and in his immediate presence, are harmless irregularities, in the absence of proof by a party deeming himself aggrieved that he is actually prejudiced thereby.

10. As a rule irregularities in executing a statutory method for selecting jurors are deemed immaterial, unless it appears probable that the person desiring to take advantage thereof may probably be prejudiced thereby.

11. The rule that an unsuccessful challenge to a juror is waived by failure to object to the panel collected for the trial, does not apply to a challenge to the array.

12. As to whether the purpose of a person who has shot another was to take that other's life, proof that had the bullet spent its force in the direction it was discharged the result would probably have been such other's death, is competent.

13. Proof that a person assaulted another with a deadly weapon in such a way that had the effect of the assault not been turned aside by some means not reasonably to have been expected by such person, the natural and probable result would have been the death of such other, is sufficient to warrant a finding that the intention of such person in making such assault was to take such other's life.

14. Exceptions to instructions not preserved in a bill of exceptions cannot be reviewed upon appeal.
      [Syllabus by MARSHALL, J.]


ERROR to review a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Plaintiff in error was duly informed against as having on the 3d day of August, 1902, at Dodge county, Wisconsin, made an assault on Ida Ullman with a loaded revolver with intent her, the said Ida Ullman, to kill and murder. In due time and form he entered a plea of not guilty, and was tried in October, 1903, in the circuit court for Dodge county.

The evidence indicated that about 7 o'clock a. m. on the day mentioned in the information the girl started from the place where she had been at work to go to her father's home, a considerable distance therefrom; that while on the journey she met her father; that about 8 o'clock a. m., while in his company on an unfrequented road in a rather secluded locality, he shot her with a revolver in a vital part of her body; that he then fled from the scene, leaving her in an apparently dangerous condition; that she was found about seven hours thereafter some five feet from where she stood when shot, so weak from loss of blood as to be helpless, and from the time of the occurrence to the time of the trial the conduct of the accused was consistent with the theory that he shot the girl intending to kill her. The jury rendered a verdict of guilty as charged. A motion to set aside the verdict and grant a new trial was seasonably and properly made to preserve for review such questions as depended thereon. The motion was overruled and judgment was rendered upon the verdict in due form of law.

*J. E. Malone,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *Paul O. Husting,* district attorney, and oral argument by the *Attorney General.*

MARSHALL, J. Before impaneling the jury for the trial was commenced, counsel for the accused said he desired to "file a challenge to the array of jurors," accompanying such statement by presenting a paper in that regard, which was placed on file. Such paper was not incorporated into the bill of exceptions, neither does the bill show in any formal way the grounds of the challenge. The proceedings had in respect to the matter show pretty clearly what such grounds were. The point is made by the attorney general that such a challenge must be made in writing, stating specifically the grounds thereof, and that the writing must be embodied

in the bill of exceptions in order to enable this court to re-view the decision of the trial court in respect thereto. If that be correct, whether the decision overruling the challenge to the array was proper or not, is not before us.

At common law a challenge to the array was required to be made in writing, stating specifically the grounds relied on. An issue of law or fact was then formed in respect thereto, which was tried by the court, if one of law, and by triers appointed by the court, if of fact. Under our statutory system for selecting and returning jurors there is no challenge to the array in the strict common-law sense. The Code was designed to be as complete for the trial of criminal as for the trial of civil cases. It makes no provision for a challenge to the array, or for any equivalent proceeding. One is liable to fall into confusion in respect to the matter by failing to note the fact that most of the decisions in this country in Code states, where it is said that a challenge to the array must be in writing, are based on statutory requirements. In Iowa, where there is an express provision for a challenge to the entire panel, it is said that the common-law challenge to the array does not exist. *State · v. Davis,* 41 Iowa, 311. It is said in cases decided in New York, California, Texas, Michigan, Minnesota, Mississippi, and other states that might be mentioned, that a challenge to the array must be in writing, but it will be found on investigation that such decisions merely follow statutory requirements. The ancient method of trying issues of fact raised on such challenge is obsolete. All issues, whether of law or fact, on an objection to the entire panel of jurors are now triable summarily by the court, whether the making of the challenge is regulated by statute or is a mere matter of practice regulated by the court. Trial courts have inherent authority, and it is their duty, to permit and give consideration to objections seasonably and properly made to the entire panel of jurors, based upon grounds specifically stated, which, if true, indicate that

the statutory method of selecting jurors was prejudicially departed from. The motion or objection may properly be, as it commonly has been in this state under the Code, called a challenge to the array. *State v. Cameron,* 2 Pin. 490; *Conkey v. Northern Bank,* 6 Wis. 447; *Perry v. State,* 9 Wis. 19. But that does not imply that it must be regarded as having all the common-law characteristics. It has only such of them as are appropriate to our judicial system. It is said in 12 Ency. Pl. & Pr. 426: "At common law a challenge to the array was required to be in writing, and where this requirement has not been abrogated by statute the rule of the common law is still in force," citing authorities from seven states, in each of which, however, the matter is regulated by statute.

There is neither any statute nor rule of court nor decisions in this state regulating definitely the practice as to objecting to the entire panel of jurors. The right to make such an objection, however, has always been recognized, and exists by well-established practice. It makes no very great difference how the question of the validity of the panel is raised so long as the grounds thereof are brought definitely to the attention of the court. It may be in the form of an objection to the entire panel, or a motion to quash the return thereof, or be made in the set phrase of a challenge to the array. Mere form is of little consequence when not necessary by statute. The spirit of the Code, generally speaking, is that the substance of things only is material. If it were the practice to make the objection only in writing and to denominate it by any particular name, and the trial court were to permit a violation thereof and entertain the matter nevertheless, unless it appeared that the adverse party was prejudiced thereby the error would be regarded as harmless under sec. 2829, Stats. 1898.

While it is good practice to make a challenge to the array, so called, in writing, since there is no statute requiring it to

be so made, and a stenographer is now a part of the regular machinery of a trial court, who is expected to take down accurately everything that occurs in the course of a trial, the reason, in the main, for the common-law rule as to the manner of presenting the challenge no longer exists. It should therefore be deemed entirely sufficient if the challenge is stated definitely at the bar of the court and taken down by the stenographer.

It was early held here in harmony with the common-law rule that the grounds of a challenge to the array should be specifically stated. *Conkey v. Northern Bank,* 6 Wis. 447. That should be regarded as the settled practice. Though the trial court has some discretion as to how specifically the grounds of challenge must be stated, the statement should be sufficiently full and definite to inform the trial court and the adverse party reasonably of the precise departures from the legal requirements relied upon. The right of challenge should be exercised before commencing to impanel the jury, otherwise it should be deemed waived. 12 Ency. Pl. & Pr. 424. No departure from that rule is permissible except for extraordinary reasons.

In this case the practice as to the time of making the objection, motion, or challenge and the manner thereof, except in that the specific grounds relied on do not appear in the bill of exceptions, the writing in respect thereto being absent therefrom, was proper. The practice of the court also in treating the grounds assigned for the challenge, not admitted by the adverse party, as at issue and summarily trying the issues, was proper. Since such grounds were not formally stated, taken down by the stenographer, and preserved in the bill, and the writing filed was not so preserved, we might properly omit consideration thereof. However, since it appears that the questions raised by the challenge were fully tried and the grounds with reasonable clearness appear from the evidence, we have concluded to treat the matter.

The evidence taken upon the trial of the issues involved
in the challenge indicates that the grounds relied on were as
follows: First, whereas the statute provides that the jury
commissioners shall furnish the clerk of the circuit court one
list of names of persons qualified to serve as jurors, to be
drawn from the body of the county, each commissioner pro-
posed and furnished a partial list, and such lists were treated
as satisfying the statute. Second, the commissioners did not
furnish the clerk of the circuit court a complete list of names
verified or certified in proper form. Third, the clerk did not
make a copy of the lists filed and deliver the same to the com-
missioners or any one of them. Fourth, the names furnished
to the clerk as aforesaid were not written upon separate slips
of paper, and the slips folded and put into a box by the clerk
or his deputy, as the law requires. The facts appear to be
these: Each commissioner made a list and submitted it to
the three for consideration. They approved of such three
lists, which in the aggregate included the requisite names, as
the one list which the statute required, and delivered the same
to the clerk of the circuit court. Such clerk did not make a
copy of the lists so furnished and deliver the same to at least
one of the commissioners, as the law requires, but each of the
commissioners, to the knowledge of the clerk, preserved a
copy of the list proposed by him. The law does not require
the commissioners to make any verification or formal certifi-
cation of the list furnished to the clerk. While neither the
clerk nor his deputy wrote the names of the persons appear-
ing upon the lists furnished, as aforesaid, on separate slips
of paper, and it is not certain that either one of them folded
the slips after the names were written thereon, and placed
the same in a box in the presence of the commissioners, as
the law requires, the names were so written by a person act-
ing under the direction of the clerk in his presence and in
the presence of the deputy and the commissioners, and the
slips were then by the direction of the clerk, in his presence

and in the presence of the commissioners, either by the deputy clerk or the person who wrote the names, placed in the box. The names so written upon slips of paper and put in the box were the identical names on the list furnished by the commissioners. There is an entire absence in the record of any showing of prejudicial departure from the letter of the statute. The mere fact that each commissioner proposed a list of names for a part of the entire list to be agreed upon, and the several partial lists were approved and in that form handed to the clerk, instead of the three lists being transferred to one and in that form delivered, is of no consequence whatever. The fact that the physical acts of writing the names on slips of paper and folding such slips ready for the box and putting them therein, if such be the fact, in the whole, is likewise of no consequence, since it appears that such person acted under the immediate direction of the clerk, in his presence and in the presence of the commissioners, and there is not only no indication that there was any prejudicial departure from the statute in the matter, but there is conclusive affirmative evidence to the contrary. The general rule as to irregularities in executing the statutory method for selecting jurors is that they are to be deemed immaterial, unless it appears probable that the person seeking to take advantage thereof may be prejudiced thereby. Proffatt, Jury Trial, § 154; Thompson & Merriam, Juries, § 134; 12 Ency. Pl. & Pr. 277.

The point is made by the attorney general that in any case the challenge to the array was waived by the failure to object to the jury as a whole, reliance being placed on *Jackson v. State,* 91 Wis. 253, 267, 64 N. W. 838. The rule invoked has never been, and it seems cannot reasonably be, applied to objection to the entire panel of jurors. It only goes to objections to individual jurors. When an exception is once properly saved to a ruling on an objection to the entire panel of jurors it will be available upon a subsequent review of the

final result without further calling the matter to the attention of the trial court.

The bullet entered the girl's person near the lower lobe of the left ear and came out a little to the right of the center of the neck below the line of the hair. The wound was badly powder-burned as if the weapon were held close to the point where the bullet struck. The doctor who examined the wound shortly after it was made, and who stated that he thought he could tell from such examination the direction of the bullet at the instant it entered the girl's body, was permitted to give opinion evidence as to what would have been the natural and probable result if it had continued in such direction, and stated that such result would have been death. We perceive no error in that. The gist of the offense charged was intent to take human life. Whether the natural and probable consequence of the conduct of the accused was to effect that end bore most strongly upon what his intent in fact was. If the result had been death, produced by a deadly weapon used in such a manner as to naturally and probably so result, unexplained, the presumption would be that the accused made the assault with premeditated design to kill, and the grade of his offense murder in the first degree. *Cupps v. State,* 120 Wis. 504, 97 N. W. 210, 98 N. W., 546. It is said that there was no evidence upon which to base the question propounded to the doctor. It seems to us clearly otherwise. He testified as before indicated. He fully qualified himself to give the probable result of a bullet striking a person, as in the given case, and continuing on its course. It seems that the basis of his opinion was amply sufficient, but if it were otherwise it certainly could not well be said that the decision of the trial court on the question of competency was clearly wrong, which would be necessary to justify disturbing it. *Emery v. State,* 101 Wis. 627, 648, 78 N. W. 145.

Some complaint is made of the instructions to the jury,

but since no objections in that regard are in the bill of exceptions, none are properly before us for review.

It is said that the evidence was not sufficient to warrant the jury in finding the element of felonious intent to kill. Evidently counsel in making that point did not fully appreciate that satisfactory proof that a person assaulted another with a deadly weapon in a manner naturally calculated to probably produce that other's death, and producing it, raises a presumption, in the absence of evidence sufficient to create a reasonable doubt in respect thereto, that such result was intended and that such person is guilty of murder in the first degree. *Cupps v. State, supra.* It follows from that rule in the same circumstances, leaving out that of the accomplishment of the felonious purpose, such person would be presumed guilty, as a matter of fact at least, of assault with intent to commit the crime of murder. The jury were well warranted in concluding that the evidence was barren of any indication that—when the accused turned his revolver on his daughter and discharged it toward a vital part of her person, holding the weapon so closely thereto as to force the powder into the wound made by the bullet,—he did not have, just what such circumstances naturally indicate,—a specific intent to kill the girl. His immediately fleeing from the scene, leaving her in a lonely place apparently in a dying condition, and many other circumstances shown by the evidence point very forcibly to the felonious intent charged. It seems needless to go over the evidence in detail. Suffice it to say that it is difficult to see how the jury could have reached any other conclusion than they did.

There is no other matter referred to in the argument of counsel for plaintiff in error which seems to be sufficiently important to warrant special reference thereto.

*By the Court.*—Judgment is affirmed.