## STATE v. LANGFORD et al.

### No. 11045.

Court of Civil Appeals of Texas. Galveston.

Oct. 3, 1940.

Rehearing Denied Nov. 14, 1940.

Fred Erisman, of Longview, for appellant.

No brief filed for appellees.

MONTEITH, Chief Justice.

This action was brought by the State of Texas, through the District Attorney of Gregg County, against Dewitt Langford, who was alleged to have been the owner and operator of four described marble machines, and Red Purtle, Maxine Parker, Jeff Burgess and Ruel F. Brown, in whose places of business said machines were alleged to have been exhibited under his direction, for the purpose of having appellees appear and show cause why said machines should not be destroyed as gambling devices under Art. 637 of Vernon's Annotated Penal Code. Appellees answered by general demurrer and general denial.

In a trial before the court judgment was rendered that the property be returned to Langford. The court found in his decree that the machines in question were not gambling paraphernalia per se and that the State had failed to show that they had been used or exhibited for gambling purposes.

The record shows that the four marble machines in question were owned and operated by Dewitt Langford and were exhibited under his direction by the other four appellees. The machines consisted of a playing board in which there were a number of holes in which marbles used in playing the game could be lodged. The playing board was protected by a glass cover. Springs and resilient pins were driven into the surface of the playing boards for the purpose of diverting the marbles and causing them to roll in uncertain directions across the surface of the boards. The player in order to secure a marble with which to play the game was required to deposit a five-cent piece in a slot in the machine. When the coin was inserted in the slot the marble was released and was propelled by a plunger inside of the machine on to the playing board. The player could, through chance, obtain a designated number of free games by the marble striking a sufficient number of pins or falling into designated holes on the playing boards of said machines. If the score was not sufficiently high, no free games were won. It was possible to redeem the plays on each of said machines in cash or trade, but it was not shown that plays on any of the machines in question were so redeemed. Appellee Langford testified that he had directed the parties with whom said tables had been placed not to redeem plays on said machines in cash or trade.

Art. 637, Vernon's Annotated Penal Code, provides, in effect, that if upon a hearing before a justice of the peace or a county or district judge the property seized is found to be a gaming table or bank, or that it is used for equipment or paraphernalia for a gambling house, and was being used for gaming purposes, the judge shall order that the property be destroyed. Section No. 2 of said Article further provides that if the judge before whom the case is pending shall determine that the property seized is not gambling paraphernalia per se but that the same or any part thereof was being used as equipment or paraphernalia for a gambling house and was being used for gaming purposes, and that said property was capable of being used for some illegal purpose, he may, in his discretion, by order of the court declare the same confiscated and cause same to be delivered to the State of Texas.

Art. 619, Vernon's Annotated Penal Code, provides among other things that: "Any such table, bank, wheel, machine or device shall be considered as used for gaming if money or anything of value is bet thereon."

The controlling question to be determined in this appeal is whether or not free games won on the said machines constitute a thing of value within the meaning of said Art. 619, and thereby renders said machines gambling paraphernalia, tables or devices.

Appellant contends that free games won are things of value, and that since the undisputed evidence shows that the machines in question were exhibited as contemplated by Art. 623, Vernon's Annotated Penal Code, which provides that "The word 'exhibited' is intended to signify the act of displaying the bank or game for the purpose of obtaining bettors", that said machines were gambling paraphernalia and that they should be ordered destroyed as such.

No brief has been filed in this court by appellees.

While we have been cited to no case of parallel facts decided by the courts of this state, and have found none, the courts of the State of Arkansas, under statutes similar in practically all respects to the Articles of the Penal Code in force in this state, under similar states of fact, have held a machine to be a gambling device where its operation is such that, although the player in any event will receive something, he stands to win something in addition thereto.

The Supreme Court of Arkansas in the case of Rankin, Constable, v. Mills Novelty Company, 182 Ark. 561, 32 S.W.2d 161, 162, a case in which a device upon which a game of baseball could be played, says:

"In order to constitute a gaming device under the statute, it must be one that is adapted or designed for the purpose of playing any game of chance or at which any money or property may be won or lost, and any one who shall bet any money or valuable thing, or 'any representative of any thing that is esteemed of value,' is guilty, under section 2634 of Crawford & Moses' Digest, of betting on a gambling device. By section 2640 of the same chapter of the Digest 'gambling' is defined as the betting of any money or any valuable thing on any game of hazard or skill. It is clear from these sections and the entire chapter on gaming that the word 'property,' as used in section 2630, and the word 'valuable thing,' mentioned in other sections, are used synonymously, and that any valuable thing or 'any representative of any thing that is esteemed of value' is 'property' within the meaning of section 2630, supra.

"The machine in question is one which always gives in exchange for a nickel a package of mints, and, in addition to the mints, a number of 'slugs,' in varying amounts from two to twenty, with which a game may be played, there being an element of chance in the number of slugs obtained for a nickel. Is the right to play a game obtained in the above manner 'property' or a 'thing of value' within the meaning of our statute prohibiting the setting up of gambling devices and gambling? We think it is. It is a matter of common knowledge that the maintenance of places, having no value in themselves, but which are used for amusement only, are among the most remunerative kinds of property, such as miniature golf courses and other like means of amusement, and any thing that contributes to the amusement of the public is a thing of value. * *. * "

The holding in the Rankin case is followed by the Supreme Court of Arkansas in the case of Howell v. State, 184 Ark. 109, 40 S.W.2d 782.

In the case of Mills v. Browning, Tex. Civ.App., 59 S.W.2d 219, suit was brought to recover automatic mint vending machines which had been seized under Arts. 636 and 637, Vernon's Annotated Penal Code. The machines in question were operated by inserting a coin in the slot and pulling a lever. The player received a varying number of tokens, some of them reciting thereon "good for 5¢ in merchandise", others bearing no inscription. Each of these tokens could be, if the player desired, played back into the machine with the hope of increasing the number of the player's tokens. The court in its opinion held that the machines in question were essentially gaming devices as a matter of law.

In the case of Chambers v. Bachtel, 5 Cir., 55 F.2d 851, 852, the court held that a machine which paid off in tokens which could be played in the machine was a gambling device. In this case there was no proof of an agreement to redeem the tokens received, in cash or merchandise, however by the removal of a pin in the machine coins ranging from a nickel to a half dollar could be substituted for tokens and the machines thereby converted into gambling devices. The court in its opinion says: "He would be a credulous person indeed who could believe that the customers playing with nothing but tokens expected only amusement and were not actuated by the belief that they could exchange them for money or other thing of value. It is of no significance that there was no agreement to redeem the tokens in cash or in goods."

In the cases of Houghton v. Fox, Tex. Civ.App., 93 S.W.2d 781; Carroll v. State, Tex.Cr.App., 81 S.W. 294; Brogden v. State, 47 Tex.Cr.R. 121, 80 S.W. 378, the courts in each of said cases held that it was unnecessary to prove that money or anything of value was bet upon the game.

The trial court's implied conclusion that it was necessary for the State to establish that said machines were gambling paraphernalia per se, and that they had been used for gambling purposes, before they could be seized and confiscated cannot be sustained.

In the case of Roberts et al. v. Gossett et al., Tex.Civ.App., 88 S.W.2d

507, 509, under a state of facts similar in many respects to those in the instant case, in that appellant's suit was against the sheriff and other officers to prevent them from seizing and confiscating the machines and instituting criminal proceedings against them, the court in its opinion says: "The burden of proof was on relators to establish the facts which entitled them to the relief prayed for. We think the record sufficiently shows that respondents were proceeding under an applicable valid statute, and upon facts which prima facie gave them this right. *They did not have to show the marble machines were per se gaming tables. Being so constructed as to be capable of being operated as such, their right to proceed is absolute,* if they were in fact so operated." (Emphasis ours.)

Under above holdings, the judgment of the trial court is reversed and the cause remanded with instructions that the same marble machines in controversy be ordered destroyed as gaming devices or paraphernalia.

Reversed and remanded, with instructions.