

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

January 27, 1950

Hon. Stewart W. Hellman
Criminal District Attorney
Fort Worth, Texas

Opinion No. V-991

Dear Sir:

Re: The legality of operating the
amusement device called the
"Hollycrane" in Texas.

Your request for an opinion reads in part as follows:

" . . . .

"We are advised that the "HOLLYCRANE"
consists of a wooden cabinet 48 inches by 32 inches,
which is enclosed on two sides and the top with
crystal-clear glass, which provides perfect vision
without distortion. The cabinet contains a portable
playing field 30 inches long by 20 inches wide, the
floor of which is dressed with colored sea shells,
upon which are laid small metal animals. The play-
ing field is illuminated by flourescent lights, giving
the player a perfect view of the field and all operat-
ing features of the machine, and which, in the opera-
tion of the machine, permits the player to use his own
judgment of depth perception by the operation of two
electric controls, one each for forward and cross mo-
tion. The skill with which these electric control
levers are manipulated regulates and controls the
operation of the crane. The levers are provided at
the front of the machine, one lever enables the play-
er to move the crane in a forward motion along the
length of the playing field from one end to the other
or to any desired position on said playing field. The
other lever enables the player to move the crane to
the right across the playing field entirely from one
side to the other or to any desired location on the
playing field.

" . . . .

"Upon reaching the desired location either for-
ward or sideward or both, the crane, automatically
lowers to the playing field, upon which are laid the

metal animals, and the crane then depending on
the skill and accuracy of the player, picks up one
of the metal animals. The crane then automatically
rises and returns to the starting position . . . ."

You subsequently advised us that:

"It is my understanding that there are three types
of the HOLLYCRANE machine. They are all operated
in a similar manner, the difference in them being the
premiums which are given, if the operators of said
machines are skillful enough to receive anything for
their efforts.

"MACHINE NUMBER ONE. It is my understanding that this machine will deliver to the operator a
premium; which, when so operated, would be a gambling
device and a violation of law.

"MACHINE NUMBER TWO. It is my understand-
ing that on this machine, the operator can also receive
free games from the machine, if he is skillful enough
in the operation of same. This also would be a violation
of law.

"MACHINE NUMBER THREE. It is my contention
that when an operator of this machine, in using his skill,
comes in contact with one of the premiums, and said
premium is lifted by the HOLLYCRANE, and nothing de-
livered and no free games given, that this is not a vio-
lation of law, but a game of skill. This is the machine
on which I would like to have an opinion from the Attor-
ney General's office, if you think I am correct in my
views of the matter."

Trade literature submitted with your original request de-
scribes the Hollycrane and its operation as follows:

"Wide expanse of play-field adds to the excitement
of play and emphasizes the skill-factor which is important
in practically all territory . . . Mirror at end of cabinet
creates illusion of greater-than-actual size . . . Although
average operating cycle is only 10 seconds, the excitement,
suspense and skill-thrill is so intense that players receive
complete satisfaction and are eager to try again . . . ."

You have expressed the opinion that those models of the Hol-
lycrane described by you as "Machine No. One" and "Machine No. Two"
are gaming devices, but wish to know whether the operation of "Machine

No. Three" violates the gaming laws of Texas.

Article 619, V.P.C., provides as follows:

"If any person shall directly, or as agent or employe for another, or through any agent or agents, keep or exhibit for the purpose of gaming, any policy game, any gaming table, bank, wheel or device of any name or description whatever, or any table, bank, wheel or device for the purpose of gaming which has no name, or any slot machine, any pigeon hole table, any jenny-lind table, or table of any kind whatsoever, regardless of the name or whether named or not, he shall be confined in the penitentiary not less than two nor more than four years regardless of whether any of the above mentioned games, tables, banks, wheels, devices or slot machines are licensed by law or not. Any such table, bank, wheel, machine, or device shall be considered as used for gaming, if money or anything of value is bet thereon."

We agree with your conclusion that the first two types of the Hollycrane described by you are gaming devices as defined by our statutes. In the recent case of Hoffman v. State, 219 S.W.2d 539 (Tex. Civ. App. 1949), it was held:

"Appellant first argues that his Bridgo game (the ball-throwing feature) is admittedly and in fact one of skill and such as the statutes against gaming were never intended to cover; as opposed to pure games of chance with associated gambling or betting. We will consider the ball-tossing device as a game of skill in accordance with stipulations, though the question of whether it was predominantly of such character, if open, would appear debatable. However, the point need not be argued. Our courts have construed Arts. 619, 621 and 625 as drawing no distinction between games of chance and games of skill, but as condemning all games upon which money or 'anything of value' is staked or waged on the outcome; taking the view, in short, that playing a game, whether of skill or chance, for money or 'other thing of value' constitutes gambling or gaming. Adams v. Antonio, Tex. Civ. App., 88 S.W.2d 503 (writ refused); Callison v. State, Tex. Civ. App., 172 S.W.2d 772. 'This betting on games is the evil our law seeks to eradicate.' Stearnes v. State, 21 Tex. 692, 693. Texas courts further hold that amusement is a 'thing of value' and that free games won on marble machines at least are within condemnation of

the statutes. State v. Langford, Tex. Civ. App., 144 S.W.2d 448; Hightower v. State, Tex. Civ. App., 156 S.W.2d 327 (writ refused) . . . ."

We do not believe the present statutes on gaming devices prohibit that model of the Hollycrane which gives no reward to the player, and described by you as "Machine No. Three." However, actual employment of this model as an adjunct to gaming, as by "side-bets" or by separate rewards by the displayer, for example, would bring this model within the statutes proscribing gaming. Hightower, v. State, 156 S.W.2d 327 (Tex. Civ. App. 1941, error ref.), wherein the court said:

"As to the other machines . . . it is undisputed that none had any automatic 'pay-off' adjustment; and that the only result from playing thereof was the amusement of the player in securing a high score. No testimony whatever discloses an understanding on the part of any store proprietor to pay 'over the counter' for high or particular scores; or that any player was seen or permitted to bet on the machines' operation . . . .

"It would follow, therefore, that marble machines of the 'non-pay-off' variety, as to which no evidence is adduced of their being used for gaming purposes at the time of seizure, are not gambling devices within the inhibition of above statutes. . . . An entirely different situation would exist if, by mechanical adjustment, the machines were made to pay off; or if an understanding be had with the proprietor 'over the counter' to the same effect; or in case of knowledge and acquiescence by the machine keeper to a wagering by players upon resulting scores. The machines would then become gambling devices per se, placing defendants factually within the purview of Houghton v. Fox, supra; . . . ."

From the above it follows that the model of the Hollycrane which gives no reward to the player, while not per se illegal may become so if it is used as an adjunct to gaming.

## SUMMARY

Two described models of the mechanically operated amusement device known as the "Hollycrane," one of which rewards the player in premiums and the other in free games, are gaming devices under the provisions of Art. 619, V.P.C. Hoffman v. State, 219 S.W.2d 539 (Tex. Civ. App. 1949). A third model, giving no reward to the

player, while not per se illegal may become so if used as an adjunct to gaming. Hightower v. State, 156 S.W. 2d 327 (Tex. Civ. App. 1941, error ref.).

Yours very truly,

PRICE DANIEL
Attorney General

Frank McCracken

Willis E. Gresham

Assistants

APPROVED:

Charles D. Mathews
Executive Assistant

WEG:v